**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

DANIEL FEQUIERI,

                                Plaintiff,

         - v -                                  Civ. No. 9:12-CV-0908
                                                     (FJS/RFT)

M. EDDY, *Sergeant, Upstate Correctional Facility*, ST. MARY, *C.O., Upstate Correctional Facility*, FOURIOR, *Correctional Officer, Upstate Correctional Facility*, BOYD, *C.O., Upstate Correctional Facility*, WOODS, *C.O., Upstate Correctional Facility*, HOLMES, *Nurse, Upstate Correctional Facility*, GOKEY, *Sergeant, Upstate Correctional Facility*,[1]

                                Defendants.

**APPEARANCES:**                                **OF COUNSEL:**

**DANIEL FEQUIERI**
Plaintiff, *Pro Se*
06-A-0444
Upstate Correctional Facility
Malone, NY 12953

**HON. ERIC T. SCHNEIDERMAN**               **JOSHUA E. McMAHON, ESQ.**
Attorney General of the State of New York       Assistant Attorney General
Attorney for Defendants
The Capitol
Albany, NY 12224

**RANDOLPH F. TREECE**
**United States Magistrate Judge**

## REPORT-RECOMMENDATION and ORDER

*Pro se* Plaintiff Daniel Fequieri brings this action, pursuant to 42 U.S.C. § 1983, alleging that

Defendants knowingly housed him with rival gang members on February 19, 2010, March 15, 2010

---

[1] Plaintiff mistakenly refers to Defendants Fournior and Wood as "Fourior" and "Woods" in his papers. *See* Dkt. No. 49-2, Defs.' Mem. of Law, at p.1 n.1.

on two occasions,[2] and two years later on May 20, 2012, and that he was not provided with adequate medical care for injuries he sustained during a resultant fight on March 15, 2010. Dkt. No. 7, Am. Compl. Defendants now move for summary judgment pursuant to Federal Rule of Civil Procedure 56. Dkt. No. 49. Plaintiff opposes their Motion. *See* Dkt. Nos. 54, Pl.'s Opp'n, & 56, Pl.'s Supp. Opp'n. For the reasons that follow, we recommend that the Defendants' Motion be **GRANTED**.

## I. STANDARD OF REVIEW

Pursuant to FED. R. CIV. P. 56(a), summary judgment is appropriate only where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The moving party bears the burden to demonstrate through "pleadings, depositions, answers to interrogatories, and admissions on file, together with [ ] affidavits, if any," that there is no genuine issue of material fact. *F.D.I.C. v. Giammettei*, 34 F.3d 51, 54 (2d Cir. 1994) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). "When a party has moved for summary judgment on the basis of asserted facts supported as required by [Federal Rule of Civil Procedure 56(e)] and has, in accordance with local court rules, served a concise statement of the material facts as to which it contends there exist no genuine issues to be tried, those facts will be deemed admitted unless properly controverted by the nonmoving party." *Glazer v. Formica Corp.*, 964 F.2d 149, 154 (2d Cir. 1992).

To defeat a motion for summary judgment, the non-movant must set out specific facts showing that there is a genuine issue for trial, and cannot rest merely on allegations or denials of the

---

[2] In his Amended Complaint Plaintiff alleges that he was involved in an altercation on March 13, 2010 as well. However, in his Deposition, Plaintiff clarifies that he was actually involved in two separate incidents on March 15, 2012, and that his inclusion of the March 13 date was a mistake. Dkt. No. 49-7, Daniel Fequieri Dep., dated July 19, 2013, at pp. 52–53.

facts submitted by the movant. FED. R. CIV. P. 56(c); *see also Scott v. Coughlin*, 344 F.3d 282, 287 (2d Cir. 2003) ("Conclusory allegations or denials are ordinarily not sufficient to defeat a motion for summary judgment when the moving party has set out a documentary case."); *Rexnord Holdings, Inc. v. Bidermann*, 21 F.3d 522, 525-26 (2d Cir. 1994). To that end, sworn statements are "more than mere conclusory allegations subject to disregard . . . they are specific and detailed allegations of fact, made under penalty of perjury, and should be treated as evidence in deciding a summary judgment motion" and the credibility of such statements is better left to a trier of fact. *Scott v. Coughlin*, 344 F.3d at 289 (citing *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983) and *Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995)).

When considering a motion for summary judgment, the court must resolve all ambiguities and draw all reasonable inferences in favor of the non-movant. *Nora Beverages, Inc. v. Perrier Group of Am., Inc.*, 164 F.3d 736, 742 (2d Cir. 1998). "[T]he trial court's task at the summary judgment motion stage of the litigation is carefully limited to discerning whether there are any genuine issues of material fact to be tried, not to deciding them. Its duty, in short, is confined at this point to issue-finding; it does not extend to issue-resolution." *Gallo v. Prudential Residential Servs., Ltd. P'ship*, 22 F.3d 1219, 1224 (2d Cir. 1994). Furthermore, where a party is proceeding *pro se*, the court must "read [his or her] supporting papers liberally, and . . . interpret them to raise the strongest arguments that they suggest." *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994), *accord*, *Soto v. Walker*, 44 F.3d 169, 173 (2d Cir. 1995). Nonetheless, mere conclusory allegations, unsupported by the record, are insufficient to defeat a motion for summary judgment. *See Carey v. Crescenzi*, 923 F.2d 18, 21 (2d Cir. 1991).

## II. DISCUSSION

### A. Summary of Facts

Except where noted, the following facts are undisputed.

At all times relevant to the instant matter, Plaintiff was incarcerated at, and Defendants were employees of, Upstate Correctional Facility ("UCF"). Dkt. No. 49-1, Defs.' Statement Pursuant to Local Rule 7.1(a)(3) (hereinafter "Defs.' 7.1 Statement"), at ¶¶ 1 & 2. Plaintiff is a self described member of a criminal gang known as the "Crips." *Id.* at ¶ 3; Am. Compl. at p. 5.[3]

Plaintiff alleges that on February 19, 2010, Defendants St. Mary and Fournior, Corrections Officers ("C.O.") at UCF, escorted a member of the "Bloods," a rival gang to the Crips, to Plaintiff's cell. Dkt. No. 49-7, Daniel Fequieri Dep., dated July 19, 2013, at pp. 36–38. Plaintiff avers that a physical altercation then ensued; although Defendants claim there is no record of such an occurrence, both parties, however, agree that Plaintiff did not incur any injuries as a result of the alleged altercation. Fequieri Dep. at pp. 34–35; Defs.' 7.1 Statement at ¶¶ 12 & 13. Plaintiff did not file a grievance regarding this incident nor seek protective custody. Fequieri Dep. at pp. 36–38.

On March 15, 2010, Defendants C.O. Wood and C.O. Fournior escorted Plaintiff to a cell containing a different member of the Bloods gang and a physical altercation ensued. Defendants contend that as a result of this incident, Plaintiff suffered "redness on his left shoulder and a scrape to his right elbow." Defs.' 7.1 Statement at ¶¶ 14–18. However, according to Plaintiff, he also hurt his hands by punching the other inmate and the wall during the altercation. Fequieri Dep. at pp. 44–46. As a result of this incident, Plaintiff was charged with violent conduct, fighting, and

---

[3] Plaintiff's Amended Complaint contains non-sequentially numbered pages and paragraphs. Therefore, when referring to the Amended Complaint, the Court references the page numbers assigned by the Court's Electronic Case Management system.

disobeying a direct order. Dkt. No. 49-16, Laura Gokey Decl., dated Oct. 25, 2013, at ¶ 12 & Ex. A, Misbehavior R., dated Mar. 15, 2010.[4]

Following that incident, Plaintiff was moved to another housing unit. Defs.' 7.1 Statement at ¶ 17. Defendants claim there is no record of a second physical altercation involving Plaintiff on March 15, 2010. *Id.* at ¶ 24. In contrast, Plaintiff maintains that after the first incident on March 15, Defendants C.O. St. Mary and C.O. Wood put him in a cell with yet another rival gang member. According to Plaintiff this led to a physical altercation – however, the other inmate failed hit Plaintiff and thus, Plaintiff did not sustain any injuries. Fequieri Dep. at pp. 52–55. Plaintiff did not file any grievances as a result of either of the incidents which occurred on March 15, 2010, nor did he seek protective custody. *Id.* at p. 56.

Defendants maintain that there is no record of Plaintiff requesting or receiving medical care from Defendant Holmes, a nurse at UCF, on March 15, 2010. Defs.' 7.1 Statement at ¶ 27. Plaintiff maintains that after the first incident on March 15, Defendant Holmes examined him and offered him Tylenol and aspirin – which he declined because he wanted physical therapy instead. Fequieri Dep. at pp. 45–48 & 53. Plaintiff further alleges that on March 17, 2010, he requested sick call because he was still in pain, but Defendant Holmes ignored his request. *Id.* at pp. 47–49. Plaintiff admits that he did not file a grievance regarding his medical issues with Defendant Holmes because "[he] didn't know [he] could file a grievance for that." *Id.* at p. 49; *see also* Dkt. No. 49-8, Karen R. Bellamy Decl., dated Nov. 12, 2013.

Between March 16, 2010 and May 19, 2012, Plaintiff was not housed with any rival gang

---

[4] At a subsequent Tier II Disciplinary Hearing, Plaintiff pled guilty to all three charges. Gokey Decl. at ¶ 20 & Ex. C, Disciplinary Hr'g Tr., dated Mar. 18, 2010.

members. Fequieri Dep. at p. 56. However, on May 20, 2012, Defendants C.O. Wood, C.O. Fournior, and C.O. St. Mary escorted Plaintiff to a cell where another inmate, who was also a member of the Bloods gang, was already being housed. *Id.* at pp. 57 & 60. A physical altercation ensued, and Plaintiff was "observed swinging both of his arms with closed fists at the other inmate." Defs.' 7.1 Statement at ¶¶ 28 & 30. Plaintiff was later convicted of fighting and interference at a Tier III disciplinary hearing. Dkt. No. 49-23, Eric Wood Decl., dated Oct 29, 2013, at Ex. B, Disciplinary Hr'g Tr., dated May 31, 2012, at p. 7.

Interpreting the evidence in the light most favorable to the Plaintiff, on the four occasions at issue in the instant action, Defendants Eddy and/or Gokey, Corrections Sergeants at UCF, either reviewed or issued the cell assignments that resulted in Plaintiff being housed with rival gang members. *See, e.g.,* Fequieri Dep. at pp. 37–38, 42–43, & 58.[5] Plaintiff alleges that UCF kept track of the gang allegiances of its inmates, that it had a dedicated gang intelligence unit, and that his affiliation with the Crips gang was noted throughout his file. *See, e.g.,* Am. Compl. at p. 5; Pl.'s Opp'n at p. 2.[6] Contrariwise, Defendants claim that the New York State Department of Corrections and Community Supervision ("DOCCS") does not recognize gang affiliation, nor keep records of inmates' gang affiliations, and that Plaintiff's files contain no mention of his affiliation with the Crips gang. Defendants also claim that they do not take gang affiliation into account when making cell assignments; rather, they consider the inmates' height, weight, age, and race. Defs.' 7.1

---

[5] Although Plaintiff's allegations that Defendants Eddy and Gokey made the cell assignments at issue in this case are speculative at best, *see* Fequieri Dep. at pp. 31, 41–43, & 58, Defendants do not address his claims in this regard, *see* Dkt. Nos. 49-16, Laura Gokey Decl., dated Oct. 25, 2013, at ¶ 23; & 49-13, Michael Eddy Decl., dated Oct. 29, 2013, at ¶ 16. Accordingly, we accept Plaintiff's allegations as true for the purposes of the instant Motion.

[6] Plaintiff's Opposition is not sequentially paginated, therefore, the Court references the page numbers automatically assigned by the Court's Electronic Case Management system.

Statement at ¶¶ 4–6, 9, & 11.

### B. Plaintiff's Claims

#### 1. Defendants Gokey and Eddy

Plaintiff alleges that Defendants Gokey and Eddy, Sergeants at UCF, failed to protect him when, on February 19, 2010, March 15, 2010, and May 20, 2012, they knowingly assigned him to be housed with members of a rival gang despite the "scientific fact that Crips and Bloods can't get along." Fequieri Dep. at pp. 31–32; *see also* Am. Compl. Specifically, Plaintiff alleges that: (1) Defendant Eddy was responsible for the cell assignment on February 19, 2010, Fequieri Dep. at pp. 37–38; (2) that both Defendant Eddy and Defendant Gokey were responsible for his cell assignments on March 15, 2010, *id.* at pp. 41–43; and (3) that Defendant Eddy was responsible for the cell assignment on May 20, 2012, *id.* at 58. Defendants argue, *inter alia*, that Plaintiff cannot maintain a failure to protect claim against Defendants Gokey and Eddy because neither Defendant knew of Plaintiff's gang affiliation nor the affiliations of the other inmates he was housed with, and neither Defendant made cell assignment decisions based on gang affiliation. *See* Defs.' Mem. of Law at pp. 11–16; Eddy Decl. at ¶¶ 8 & 16–20; Gokey Decl. at ¶¶ 5–7 & 24–29.

A prison inmate has a constitutional right under the Eighth and Fourteenth Amendments to be free from the "unnecessary and wanton infliction of pain." *Hendricks v. Coughlin*, 942 F.2d 109, 112 (2d Cir.1991) (citation omitted). "The Eighth Amendment requires prison officials to take reasonable measures to guarantee the safety of inmates in their custody." *Hayes v. New York City Dep't of Corr.*, 84 F.3d 614, 620 (2d Cir. 1996) (citing *Farmer v. Brennan*, 511 U.S. 825, 832-33 (1994)); *Heisler v. Kralik*, 981 F. Supp. 830, 837 (S.D.N.Y. 1997) ("Prison officials have a constitutional duty to act reasonably to ensure a safe environment for a prisoner when they are aware

that there is a significant risk of serious injury to that prisoner."); *see also Avincola v. New York State Dep't of Corr. Servs.*, 1998 WL 146280, at *3 (N.D.N.Y. Mar. 27, 1998).

In order to state such a claim, the prisoner must demonstrate that the prison officials "acted with deliberate indifference with respect to his safety or with an intent to cause harm to him." *Hendricks v. Coughlin*, 942 F.2d at 113. A showing of mere negligence on behalf of the defendants is not enough to state a constitutional claim. *Whitley v. Albers*, 475 U.S. 312, 319 (1986) (cited in *Hendricks v. Coughlin*, 942 F.2d at 113). The key element of a failure to protect claim is the existence or potential existence of a substantial risk of serious harm and not the actual harm which may or may not ensue. *Farmer v. Brennan*, 511 U.S. at 836. To prove deliberate indifference, the plaintiff must show that the "official [knew] of and disregard[ed] an excessive risk to inmate health or safety." *Id*. at 837 (cited in *Ramirez v. Mantello*, 1998 WL 146246, at *2 (N.D.N.Y. Mar. 24, 1998)). "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, *and* he must also draw the inference." *Id.* (emphasis added).

The Court agrees with Defendants that there are no genuine issues of material fact with regard to the subjective element of Plaintiff's claims against Defendants Gokey and Eddy. To begin with, although Defendants Gokey and Eddy admit that they occasionally make cell assignments, it is uncontested that DOCCS does not recognize gang affiliation nor make cell assignments based on gang membership. Gokey Decl. at ¶¶ 5–7 & 23–28; Eddy Decl. at ¶¶ 5–8 & 14–22. And, contrary to Plaintiff's claims that his gang status was documented in his files, *see, e.g.*, Am. Compl. at p. 5, a review of Plaintiff's files by Defendants revealed no information whatsoever regarding his gang affiliation, Gokey Decl. at ¶¶ 8 & 9. Moreover, Plaintiff admits that he never told Defendants Gokey or Eddy that he was a member of the Crips. Fequieri Dep. at pp. 25–26 & 28–30.

Plaintiff offers a host of vague and conclusory allegations in support of his contention that Defendants were on notice of his gang affiliation, including allegations that: (1) he mentioned his affiliation with the Crips gang in a grievance he filed in 2009, Fequieri Dep. at pp. 50–52; (2) his family called and reported that he was being celled with other inmates from rival gangs to his conselor at UCF, *id*. at pp. 39–41; (3) his lengthy history of fighting with other inmates put Defendants on constructive notice, Pl.'s Supplemental Opp'n at p. 3; and (4) that in a misbehavior report the officer on duty indicated that he believed a particular fight was the result of rival gang activity, *id.* at p. 5 (citing to "Gokey Exhibit C."). However, as explained below, none of these claims raise a triable issue of fact with regard to whether Defendants Gokey or Eddy (or any other Defendant) were aware of the gang affiliation of either Plaintiff or the other inmates with whom he was housed.

With respect to his claim that he filed a grievance in 2009 which included the fact that he was a Crip, no such grievance was submitted to the Court, and Plaintiff fails to establish that any of the Defendants in the instant action were either involved in the incident that spawned his complaint or that they ever became aware of the contents of the grievance thereafter.

Additionally, Plaintiff's allegation that his family relayed his complaints that he was being celled with members of rival gangs to his counselor, also falls flat. Crucially, Plaintiff does not claim that his counselor relayed this information to any of the Defendants. Furthermore, Plaintiff's constructive notice argument – that "the reason I know that the said defendants knew of the other inmates and myself to be gang affilate[d] [is] [be]cause of the pattern set forth in my disciplinary records" – is also unavailing. Pl.'s Supp. Opp'n at p. 5. First, Plaintiff failed to submit any disciplinary records which substantiate his contention that his long history of fighting with other

inmates put Defendants on notice. Indeed, a review of the disciplinary report, pre-hearing investigation materials, and the transcript from Plaintiff's Tier II disciplinary hearing regarding the disciplinary charges he received on March 15, 2010, reveal that Plaintiff never told anyone that he or his cellmate were gang members or rivals, or that the reason they fought was because they were members of rival gangs. *See* Gokey Decl. at ¶¶ 11–22 & Exs. A–C.[7]

Finally, contrary to Plaintiff's assertion, Defendant Gokey did not submit any any acknowledgment that Plaintiff and his cellmate fought due to their status as rival gang members. *Compare* Pl.'s Supp. Opp'n at p. 5, *with* Gokey Decl. at Exs. A–C. However, even if true, Plaintiff's claims would still fail because it remains undisputed that neither Defendant Eddy nor Defendant Gokey were aware of the gang status of the inmates with whom Plaintiff was housed. While Plaintiff believes that the gang affiliation of other inmates was stored in UCF's computers, he readily admits that this belief is merely an assumption. Fequieri Dep. at pp. 43–44. Such an assumption is insufficient as a matter of law to overcome Defendants' properly supported claims that gang affiliation is neither recognized by DOCCS nor one of the factors considered by UCF personnel when making cell assignments. Eddy Decl. at ¶¶ 16–20; Gokey Decl. at ¶¶ 24–29; *see also Scott v. Coughlin*, 344 F.3d 282, 287 (2d Cir. 2003).

Thus, it is undisputed that neither Defendant had reason to believe that Plaintiff was at risk of being attacked by another inmate on the dates in question, and therefore, neither Defendant could have possessed the requisite subjective state of mind for a failure to protect claim. *Scarbrough v. Clintsman*, 2012 WL 3052960, at *8 (N.D.N.Y. June 22, 2012) (citing *Paulino v. Burlington Cnty.*

---

[7] It is also worth noting, that Plaintiff failed to mention his gang affiliation or that of his cellmate's during his May 31, 2012 Tier III disciplinary hearing following the May 20, 2012 altercation. *See* Wood Decl. at Ex B.

*Jail,* 438 F. App'x. 106, 109 (3d Cir. 2011)).

Accordingly, we recommend that Defendants' Motion for Summary Judgment be **GRANTED** with respect to Plaintiff's claims against Defendants Eddy and Gokey.

### 2. Defendant Boyd

In his Amended Complaint, Plaintiff claimed that Defendants Boyd, Wood, Fournior, and St. Mary failed to take reasonable measures to guarantee his safety when they knowingly escorted rival gang members to his cell, or escorted him to the cells of rival gang members, on February 19, 2010, March 15, 2010, and May 20, 2012. *See generally* Am. Compl.; *see also* Fequieri Dep. at pp. 31–32.

The Second Circuit has held that "personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983. *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (citations omitted). Moreover, "the doctrine of *respondeat superior* cannot be applied to section 1983 actions to satisfy the prerequisite of personal involvement." *Kinch v. Artuz*, 1997 WL 576038, at *2 (S.D.N.Y. Sept. 15, 1997) (citing *Colon v. Coughlin*, 58 F.3d 865, 874 (2d Cir. 1995) & *Wright v. Smith*, 21 F.3d at 501) (further citations omitted). Thus, "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the constitution." *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009).

Here, Plaintiff has renounced his claims that Defendant Boyd had any personal involvement in the events of February 19, March 15, 2010, or May 20, 2012. At his Deposition, Plaintiff testified that: (1) on February 19 only Defendants St. Mary and Fournior were involved in his transport, *id.* at pp. 35–37; (2) during the first incident on March 15 only Defendants Wood and Fournior escorted him, *id.* at p. 41; (3) during the second incident on March 15 only Defendants St. Mary and Wood

escorted him, *id.* at pp. 53–54; and (4) on May 20, 2012, Defendants Wood and St. Mary escorted him and he was not sure why Boyd's name was listed in the Complaint regarding that incident, *id.* at p. 57. Moreover, Plaintiff makes no other allegations against Defendant Boyd. *See generally* Am. Compl.

Accordingly, we recommend that Defendants' Motion for Summary Judgment be **GRANTED** with respect to Plaintiff's claims against Defendant Boyd. *See Wright v. Smith*, 21 F.3d at 501.

### 3. Defendants Wood, Fournior, and St. Mary

In order for Plaintiff to establish that Defendants Wood, St. Mary, and Fournior were aware that they were subjecting Plaintiff to a significant risk of harm by escorting him or by other inmates during cell assignments, Plaintiff must establish that these Defendants were aware of the gang affiliations of both Plaintiff and the inmates with whom he was housed. *Scarbrough v. Clintsman*, 2012 WL 3052960, at *8.

It is undisputed that Plaintiff never told Defendants St. Mary, Fournior, or Wood he was a member of the Crips gang. *See* Fequieri Dep. at pp. 26–27 & 29–30; *see also* Dkt. Nos. 49-15, Brian Fournior Decl., dated Nov. 8, 2013, at ¶ 8; 49-22, Kevin St. Mary Decl., dated Oct. __, 2013, at ¶ 8; 49-23, Eric Wood Decl., dated Oct. 29, 2013, at ¶ 17. Plaintiff further admits that none of these Defendants ever told him they were aware of his status as a Crip. Fequieri Dep. at 29–31. And, even if we accepted Plaintiff's claim that the gang affiliations of all inmates at UCF were noted in their records, *see, e.g.*, Am. Compl. at p. 6, it is undisputed that Defendants Wood, St. Mary, and Fournior were not responsible for ordering cell assignments nor reviewing the files of inmates who were ordered to be transferred. Fournior Decl. at ¶ 5; St. Mary Decl. at ¶ 5; Wood Decl. at ¶ 5; Fequieri

Dep. at pp. 31–32 & 38.

Thus, Defendants have established the absence of a genuine issue of material fact with respect to whether or not Defendants Wood, St. Mary, or Fournior were aware that their actions would subject Plaintiff to a significant risk of harm. And, Plaintiff's conclusory allegations that these Defendants must have known of his status as a Crip because they all work together, *see generally* Pl.'s Supp. Opp'n, or because "it had been going on for so long[,]" Fequieri Dep. at p. 32, are insufficient as a matter of law to overcome Defendants' properly supported Motion for Summary Judgment, *see Carey v. Crescenzi*, 923 F.2d 18, 21 (2d Cir. 1991).

Accordingly, we recommend that Defendants' Motion for Summary Judgment be **GRANTED** with respect to Plaintiff's claims against Defendants Wood, St. Mary, and Fournior.

### 4. Defendant Holmes

Plaintiff alleges that on March 15 and March 17, 2010, Defendant Holmes refused to treat Plaintiff for injuries he sustained during an altercation with another inmate on March 15. Am. Compl. at p. 10; *see also* Fequieri Dep. at pp. 45–49. However, we need not discuss the merits of this claim because it is undisputed that Plaintiff failed to exhaust his medical indifference claims.

The Prison Litigation Reform Act ("PLRA") provides, in pertinent part, that "no action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The Supreme Court has held that "the PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002) (citations omitted). Exhaustion is

similarly required even if the prisoner asserts futility as an excuse. *See Booth v. Churner*, 531 U.S. 731, 741 n.6 (2001) (refusing to "read futility or other exceptions into statutory exhaustion requirements where Congress has provided otherwise.") (cited in *Marvin v. Goord*, 255 F.3d 40, 43 (2d Cir. 2001)). Accordingly, the exhaustion requirements apply even where the grievance process does not permit an award of money damages and the prisoner seeks only money damages, provided the grievance tribunal has the authority to take some responsive action. *See Thomas v. Wright,* 2002 WL 31309190, at *5 (N.D.N.Y. Oct. 11, 2002) (citing *Booth v. Churner*, 531 U.S. 731 (2001)).

In New York State, the administrative remedies consist of a three-step review process. First, a grievance is submitted to the Inmate Grievance Resolution Committee ("IGRC"), a committee comprised of both inmates and facility employees.[8] N.Y. COMP. CODES R. & REGS. tit. 7, § 701.5(b). The IGRC reviews and investigates the formal complaints and then issues a written determination. *Id*. Second, if the IGRC decision is appealed, the superintendent of the facility reviews the IGRCs determination and issues a decision. *Id*. at § 701.5(c). Finally, if the superintendent's decision is appealed, the Cental Office Review Committee ("CORC") makes the final administrative determination. *Id*. at § 701.5(d). Only upon exhaustion of these three levels of review may a prisoner seek relief pursuant to § 1983 in federal court. *Bridgeforth v .Bartlett*, 686 F. Supp. 2d 238, 239 (W.D.N.Y. 2010) (citing, *inter alia*, *Porter v. Nussle*, 534 U.S. 516, 524 (2002)); *see also Neal v. Goord*, 267 F.3d 116, 121 (2d Cir. 2001), *overruled on other grounds by Porter v. Nussle*, 534 U.S. 516.

In determining whether a prisoner has failed to exhaust all available administrative remedies,

---

[8] The IGRC is a five-member body consisting of two voting inmates, two voting staff members, and a non-voting chair (who may be an inmate, staff member of volunteer). N.Y. COMP. CODES R. & REGS tit.7, § 701.4.

the Second Circuit has instructed district courts to ask: "(1) whether administrative remedies were actually available, (2) whether the defendants forfeited their right to raise the affirmative defense or by their own actions precluded the plaintiff from using administrative grievance procedures, and (3) whether special circumstances have been plausibly alleged that justify the prisoner's failure to comply with administrative procedural requirements." *Singh v. Goord*, 520 F. Supp. 2d 487, 495–96 (S.D.N.Y. 2007) (quoting *Hemphill v. New York*, 380 F.3d 680, 686 (2d Cir. 2004)).

According to Plaintiff, he never grieved his issues with Defendant Holmes because "[he] didn't know [he] could file a grievance for that." Fequieri Dep. at p. 49. However, it is undisputed that Plaintiff had successfully filed at least two grievances prior to the March 15 and March 17, 2010 incidents, including one on March 12, 2010. *See* Dkt. No. 49-8, Karen Bellamy Decl., dated Nov. 12, 2013, at Ex. A, DOCCS' Grievance R. Thus, it is clear that administrative remedies were available to Plaintiff while he was at UCF. Additionally, Defendants properly included the affirmative defense of failure to exhaust in their Answer to Plaintiff's Amended Complaint. *See* Dkt. No. 30, Answer, at ¶ 13. Moreover, Plaintiff has not alleged any facts from which it could plausibly be concluded that Defendant Holmes ever forfeited the defense. Likewise, given his familiarity with the grievance procedure, neither Plaintiff's claim that he did not know he could file grievances related to medical care, nor anything else in Plaintiff's pleadings suggest that special circumstances warrant granting him a reprieve from the PLRA's exhaustion mandate.

Therefore, we recommend that Defendants' Motion be **GRANTED** with respect to Plaintiff's claims against Defendant Holmes.[9]

---

[9] It is also worth noting that Plaintiff's allegations against Defendant Holmes appear to be nothing more than a disagreement between an inmate and a doctor regarding the proper course of treatment, a claim which is not actionable
(continued...)

### III. CONCLUSION

For the reasons stated herein, it is hereby

**RECOMMENDED**, that Defendants' Motion for Summary Judgment (Dkt. No. 37) be **GRANTED** and this action be **DISMISSED**; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Report-Recommendation and Order upon the parties to this action.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen (14) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); *see also* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72 & 6(a).

Date: June 23, 2014
       Albany, New York

_____
Randolph F. Treece
U.S. Magistrate Judge

---

[9](...continued)
under § 1983. *See* Fequieri Dep. at pp. 45–48 (Plaintiff admits that he refused to take Tylenol and aspirin from Defendant Holmes because he wanted physical therapy instead); *see also Chance v. Armstrong*, 143 F.3d 698, 703 (2d Cir. 1998) ("It is well-established that mere disagreement over the proper treatment does not create a constitutional claim. So long as the treatment given is adequate, the fact that a prisoner might prefer a different treatment does not give rise to an Eighth Amendment violation.")